UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
WESTCHESTER FIRE INSURANCE COMPANY,

       Plaintiff,

  -against-

COASTAL ENVIRONMENTAL GROUP INC.,
RICHARD C. SILVA, MARY ANN SILVA, RICHARD
C. SILVA, JR. AND LAURA A. SILVA,

       Defendants.
-------------------------------------------------------------------x

Case No.:

**COMPLAINT**

CV 15 2557

GLASSER, J.

REYES, M.J.

   Plaintiff, by its attorneys, Gottesman, Wolgel, Flynn, Weinberg & Lee, P.C., complaining

of the Defendants Coastal Environmental Group, Inc., Richard C. Silva, Mary Ann Silva,

Richard C. Silva, Jr., and Laura A. Silva, hereby alleges as follows:

   1.  Plaintiff, WESTCHESTER FIRE INSURANCE COMPANY (hereinafter "WFIC"

or "Surety" or "Plaintiff") is a corporation organized and existing under the laws of the

Commonwealth of Pennsylvania and is duly authorized to conduct business within the State of

New York as a Surety, and to execute and issue Surety Bonds in the State of New York.

   2.  Upon information and belief, at all times hereinafter mentioned, the Defendant

COASTAL ENVIRONMENTAL GROUP INC. ("Coastal") was and is a corporation organized

and existing under the laws of the State of New York, maintaining its principal place of business

at 250 Executive Drive, Suite K, Edgewood, NY 11717.

   3.  Upon information and belief, the CEO of Defendant Coastal is Defendant

RICHARD C. SILVA, a resident of the State of New York.

4.      Upon information and belief, at all times hereinafter mentioned, the Defendant RICHARD C. SILVA ("Richard Silva") was and still is a resident of the State of New York, residing at 41 Fisher Ave., Islip Terrace, NY 11752.

5.      Upon information and belief, at all times hereinafter mentioned, the Defendant MARY ANN SILVA ("Mary Silva") was and still is a resident of the State of New York, residing at 41 Fisher Ave., Islip Terrace, NY 11752.

6.      Upon information and belief, at all times hereinafter mentioned, the Defendant RICHARD C. SILVA, JR. ("Richard Silva, Jr.") was and still is a resident of the State of New York, residing at 5 Roundabout Rd., Smithtown, NY 11787.

7.      Upon information and belief, at all times hereinafter mentioned, the Defendant LAURA A. SILVA ("Laura Silva") was and still is a resident of the State of New York, residing at 5 Roundabout Rd., Smithtown, NY 11787.

## VENUE AND JURISDICTION

8.      Pursuant to 28 U.S.C. § 1332, this Court possesses diversity jurisdiction over this action against the Defendants.  The matter in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

9.      Pursuant to 28 U.S.C. § 1391(b)(2), venue lies in the Eastern District of New York, the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Indemnity Agreement)

10.      WFIC, as surety, issued a Performance Bond ("Performance Bond") and a Payment Bond ("Payment Bond") under Bond No KO8526680 (collectively the "Bonds"), on behalf of and at the request of Coastal in connection with a contract entered into between Coastal

2

and the United States of America through the National Park Service – Denver Service Center of the Department of Interior ("National Park Service"), as named Obligee in the Bonds, on or about September 24, 2012, for a project referred to in the Bonds as "Phase III of Breakwater Repairs at Riis Landing" ("Riis Landing" project).

11.      The Bonds were made, executed and delivered by WFIC, as surety, in consideration of and in reliance upon, among other things, a written Agreement of Indemnity executed by the Defendants, Coastal, Richard Silva, Mary Ann Silva, Richard Silva, Jr., and Laura Silva (hereinafter collectively referred to as "Defendant Indemnitors"), jointly and severally.  A copy of the Agreement of Indemnity is annexed hereto, marked **Exhibit "A,"** and made a part hereof, with the reference to the individual defendants' social security numbers redacted therefrom.

12.      Under the Agreement of Indemnity, Defendant Indemnitors, jointly and severally agreed, among other things, to:

> "…exonerate, hold harmless, indemnify and keep indemnified SURETY from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to court costs, counsel fees, costs of investigation, consultant fees, accountant fees, engineer or construction management fees, together with interest thereon at the maximum rate allowed by law, which SURETY may sustain or incur by reason of or in consequence of the:
>
> A. Execution or procurement of the execution of BOND(s);
> B. Failure by PRINCIPAL(s) or INDEMNITOR(s) to perform or comply with any of the covenants or conditions of this AGREEMENT;
> C. Any Event of Default herein;
> D. Enforcement of any covenant of this AGREEEMENT;
> E. Performance of any investigation, attempt or attainment of any release in connection with any BOND(s) or any loss or unpaid premium in connection with any BOND(s);

3

F.  Prosecution or defense of any action or claim in connection with any BOND(s), whether SURETY, at its own discretion, elects to employ counsel of its own selection or permits or requires PRINCIPAL(s)   or INDEMNITOR(s) to make arrangements for SURETY's legal representation; and

G.  Attempt to recover losses or expenses paid or incurred in connection with this AGREEEMENT, CONTRACT(s) and/or BOND(s).

*See* **Exhibit A at ¶THIRD.**

13.     By reason of the foregoing, Defendant Indemnitors are jointly and severally obligated to WFIC to exonerate, hold harmless, and indemnify WFIC and resolve all claims against WFIC and the aforesaid Bonds all without any loss, cost or expense to WFIC.

14.     The National Park Service provided WFIC with a Notice of Intent to Declare a Default pursuant to the contract and Performance Bond No. KO8526680 for the Riis Landing project.

15.     Claims have arisen from entities who are claiming under the Payment Bond No. KO8526680 for monies allegedly due and owing to them by Coastal for labor and for materials provided on the Riis Landing project.

16.     WFIC received, reviewed and paid a claim under the Payment Bond No KO8526680 from New York Crane and Equipment Corp. ("New York Crane") for rental equipment on the Riis Landing project. WFIC partially resolved the claim and paid New York Crane the sum of $125,282.33.

17.     WFIC also received a claim from New York Crane for two months' rent for rental equipment on the Riis Landing project in the sum of $31,573.76. The claim is currently being reviewed by WFIC.

4

18.     WFIC also received, reviewed, and paid a claim from Skyline Steel, LLC ("Skyline Steel") for materials and supplies provided to Coastal for the Riis Landing project in the sum of $257,827.16.

19.     By letter dated April 29, 2015, WFIC demanded and called upon Coastal and the Defendant Indemnnitors to indemnify WFIC in the amount of $383,109.49.

20.     Coastal defaulted by failing to pay its subcontractors on the Riis Landing project.

21.     The Defendant Indemnitors breached the Agreement of Indemnity by failing to respond to WFIC's demand for indemnification and indemnify WFIC for its losses.

22.     By reason of the foregoing, Defendants Coastal, Richard Silva, Mary Ann Silva, Richard Silva, Jr., and Laura Silva are liable, jointly and severally, to indemnify WFIC in the sum of at least $383,109.49, plus any additional losses for any payment and performance bond claims heretofore or hereafter made to the Surety and/or additional bond losses that the Surety incurs after the date of the complaint for a sum not yet determined.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Declaratory Judgment Pursuant to Agreement of Indemnity)

23.     WFIC repeats and realleges each and every allegation set forth in paragraphs "1" through "22" herein as if again set forth at length.

24.     Pursuant to the Agreement of Indemnity, an Event of Default is defined as when the Surety receives notice that Coastal is unable to perform or is in breach of any contract in the bond.

25.     An Event of Default is also defined as

B. Any failure, delay, refusal or inability of PRINCIPAL(s) to pay claims, bills or other indebtedness incurred in, or in connection with the performance of any CONTRACT;
…

5

H. In the event that CONTRACT(s), or any portion thereof, relates to the development of real property or construction of improvements upon real property: (i) the failure of PRINCIPAL(s) to pay for labor and materials ordered or used in connection with such development or construction of improvements; (ii) the diversion or non-use by PRINCIPAL(s) of loan funds, equity funds or materials intended by any lender, equity contributor or supplier of such funds or materials to be used and which are needed to perform the COTNRACT; or (iii) the voluntary or involuntary cessation or suspension of work required to be performed by PRINCIPAL(s) in connection with the CONTRACT(s)…

*See* **Exhibit A at ¶FIRST.**

26.     Under the Agreement of Indemnity, Defendant Indemnitors also agreed, jointly and severally, among other things that upon the Event of Default, Defendant Indemnitors assigned to WFIC as Surety:

A. All monies due or to become due to PRINCIPAL(s) arising out of or in any way related to CONTRACT(s) covered by BOND(s), including but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work, undisbursed loan funds, deposit or reserve accounts, and all collateral pledged by PRINCIPAL(s) and INDEMNITOR(s) to third parties in connection with the CONTRACT(s) or BOND(s);

B. All of the rights of PRINCIPAL(s) in, or arising in any manner out of, all CONTRACT(s) or BOND(s)…

*See* **Exhibit A at ¶EIGHTH**.

27.     Defendant Indemnitors further agreed to "irrevocably, nominate, constitute designate and appoint" WFIC as the attorney in-fact for the Principal and Indemnitors under a bonded contract, in this case for the Riis Landing project. *See* **Exhibit A at ¶TENTH**.

28.     Upon information and belief, the National Park Service did not issue final payment for the Riis Landing project.

29.     On or about April 14, 2015, WFIC informed the National Park Service that Coastal failed to pay its subcontractors and suppliers and was in default of its contractual obligations.

6

30.     On or about April 15, 2015, the National Park Service acknowledged WFIC's letter informing of Coastal's default and requested that WFIC provide an Indemnification/Hold Harmless Letter pursuant to FAR 28.106-7.

31.     On April 21, 2015, WFIC provided an Indemnification/Hold Harmless Letter to the National Park Service pursuant to FAR 28.106-7. The Indemnification/Hold Harmless Letter requested that the National Park Service not release to Coastal any earned or due amounts for the Riis Landing project and WFIC agreed to indemnify and hold harmless the National Park Service from any liability resulting from withholding the payment on the Riis Landing project.

32.     In addition to WFIC receiving payment bond claims, on or about April 22, 2015, the National Park Service terminated Coastal's contract for convenience effective April 7, 2015 in accordance with FAR 52.249-2.

33.     The National Park Service also provided notice to WFIC of Modification No. 0005 for a lump sum proposed payment of approximately $400,000.00 to Coastal for work performed on the Riis Landing project.

34.     On April 23, 2015, WFIC informed the National Park Service of its entitlement to the $400,000.00 payment as surety and as attorney-in-fact for Coastal pursuant to the Agreement of Indemnity.

35.     WFIC incurred payment bond losses not less than the amount of $383,827.16 because Coastal did not pay its subcontractors for the Riis Landing project.

36.     WFIC is entitled to the contract balances pursuant to Coastal's obligations under the Agreement of Indemnity based upon an Event of Default by Coastal not paying its subcontractors triggering the assignment and the attorney-in-fact provisions assigning to WFIC

all monies due and all of Coastal's rights under the contract for the Riis Landing project. *See*
**Exhibit A at ¶THIRD, EIGHTH and TENTH.**

37.    As surety and as attorney-in-fact, WFIC has the right to receive and apply the
payments on the Riis Landing project for the benefit and payment of all obligations for which
WFIC incurred a bond loss payment and for which WFIC may be liable.

38.    As Coastal's attorney-in-fact, WFIC also has the authority to execute on Coastal's
behalf the consent for payment by the government to WFIC as set forth in FAR 28.106-7(b).

39.    Pursuant to FAR 28.106-7(b), the National Park Service, upon information and
belief,  has agreed to withhold payment from Coastal in the sum of $400,000.00, but will not pay
the termination for convenience payment to WFIC unless there is either an agreement between
Coastal and WFIC or until there is a judicial determination of the rights of the parties.

40.    Despite the WFIC's request and demand to Coastal for payment of WFIC's
liquidated and unliquidated claims pursuant to the Agreement of Indemnity provisions heretofore
mentioned, as well as pursuant FAR 28.106-7(b), Coastal refused to consent to the payment of
the final payment on the Riis Landing project to WFIC and has not indemnified WFIC.

41.    By reason of Defendant Coastal's obligations to exonerate, hold harmless and
indemnify WFIC as surety under the Agreement of Indemnity and based upon the: (a)
assignment provisions of the Agreement of Indemnity and (b) WFIC as attorney-in-fact for
Coastal, WFIC is entitled to a declaratory judgment that WFIC as surety and/or as attorney-in-
fact for Coastal may execute documents necessary and is entitled to receive payment on the Riis
Landing project in the sum of $400,000.00 representing the final payment in consideration of the
termination for convenience and Modification No. 0005 issued for the Riis Landing project.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Declaratory Judgment Based on Equitable Rights of Subrogation)

42.     WFIC repeats and realleges each and every allegation set forth in paragraphs "1" through "41" herein as if again set forth at length.

43.     By making payments to subcontractors on the Riis Landing project, WFIC is subrogated in equity and at law to the rights and claims of Coastal and/or to rights and claims of the subcontractors, laborers and materialmen paid under WFIC's payment bond no. KO8526680 issued pursuant to the Miller Act (40 U.S.C. §3131).

44.     WFIC is subrogated to the rights of Coastal and WFIC is entitled to recover the termination for convenience final payment representing the contract balance in order to be made whole for the bond losses sustained or to be sustained by WFIC as surety as if Coastal had paid the subcontractors and as if Coastal would be entitled to payment of the contract balance.

45.     WFIC is subrogated as surety to the equitable rights of subcontractors who were unpaid by Coastal and which subcontractors are equitably entitled to be paid out of the contract funds.

46.     As a result of WFIC's payment bond losses and claims, WFIC's rights of subrogation as surety are superior to any right Coastal may claim.

47.     Despite WFIC's rights of subrogation, heretofore mentioned, Coastal refused to consent to the payment of the final payment on the Riis Landing project to WFIC pursuant to FAR 28.106-7(b).

48.     Pursuant to FAR 28.106-7(b), the contracting officer for the National Park Service will only "authorize final payment upon agreement between the contractor and surety or upon a judicial determination of the rights of the parties."

9

49.     By reason of the surety-principal relationship existing between WFIC and Coastal, WFIC's equitable rights of subrogation, WFIC as the attorney-in-fact for Coastal and by reason of WFIC's surety bond losses and claims set forth herein, WFIC is entitled to a declaratory judgment that WFIC has rights superior to Coastal for payment of the contract balance held by the National Park Service pursuant to the Termination for Convenience and Modification No. 0005 for the Riis Landing project.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Exoneration)

50.     WFIC repeats and realleges each and every allegation set forth in paragraphs "1" through "49" herein as if again set forth at length.

51.     Under the Agreement of Indemnity, Defendant Indemnitors, jointly and severally agreed, among other things:

> If for any reason the SURETY shall deem it necessary to establish or to increase a reserve to cover any possible liability or loss for which the PRINCIPAL(s) and INDEMNITOR(s) will be obligated to indemnify SURETY under the terms of this AGREEMENT, PRICNIPAL(s) and INDEMNITOR(s) will deposit with SURETY, immediately upon demand, a sum of money equal to such reserve and any increase thereof as collateral security to SURETY for such liability or loss.

> SURETY shall have the right use such deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which PRINCIPAL(s) and/or INDEMNITOR(s) would be obligated to indemnify SURETY under the terms of the AGREEMENT...

*See* **Exhibit A at ¶FOURTH**.

52.     WFIC notified the Defendant Indemnitors of the payments made by WFIC and of the Indemnitors' obligations to indemnify and exonerate WFIC for any loss or expenses incurred, which as of April 29, 2015 was for $383,109.49.

53.     WFIC also informed the Defendant Indemnitors that in addition to incurring losses in the sum of $383,109.49, WFIC posted an outstanding reserve of $366,890.51 to cover additional potential liability.

54.     WFIC demanded and called upon the Defendant Indemnitors to collateralize and exonerate WFIC in the amount of $366,890.51 to cover WFIC's outstanding reserve.

55.     Despite said demand and the obligations under the Agreement of Indemnity, the Defendant Indemnitors have failed to indemnify WFIC and have failed to deposit any collateral with WFIC.

56.     By reason of the acts and omissions of the Defendant Indemnitors, collectively and separately, WFIC has been denied and deprived of its right of exoneration and has been denied and deprived of the benefits and security of Defendant Indemnitors' indemnification, which each of the Defendant Indemnitors contractually agreed to provide when they induced WFIC to execute the bonds and which WFIC relied upon in executing said bonds.

57.     WFIC has duly performed all conditions of the Agreement of Indemnity required on its part to be performed, yet Defendant Indemnitors have failed to indemnify WFIC in the sum of $383,109.49 and have failed to deposit collateral and exonerate WFIC in the amount of $366,890.51 and the Defendant Indemnitors are in breach of the Agreement of Indemnity.

58.     By reason of the foregoing, WFIC demands that the Defendant Indemnitors exonerate WFIC as and against any and all claims heretofore made in the sum of at least $750,000.00 which includes indemnification in the sum of $383,109.49 and exoneration by deposit of collateral in the sum of $366,890.51.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Indemnification for Fees and Expenses)

59.    WFIC repeats and realleges each and every allegation set forth in paragraphs "1"
through "58" herein as if again set forth at length.

60.    Additional sums were incurred and paid by WFIC in connection with the
performance and payment bond obligations for investigating and/or resolving the aforementioned
payment bond claims including counsel fees and expenses, although the matter has not been
concluded by Coastal and attorney fees and expenses in connection with the foregoing and this
litigation continue to be incurred by WFIC.

61.    WFIC has heretofore paid loss expenses, including attorneys' fees and expenses
in the sum of $6,380.00.

62.    By reason of the foregoing, Defendant Indemnitors are liable, jointly and
severally, to WFIC for all losses, costs, charges for attorneys' fees and expenses that will be
sustained or incurred by WFIC in connection with the issuance of Performance and Payment
Bond and/or with this litigation, including, but not limited to attorneys' fees and expenses
heretofore incurred and paid in the amount of $6,380.00 through March 31, 2014, plus such
additional amounts for attorneys' fees and expenses incurred thereafter in a sum not yet
determined.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Indemnification for Additional Fees and Expenses)

63.    WFIC repeats and realleges each and every allegation set forth in paragraphs "1"
through "62" herein as if again set forth at length.

64.     Pursuant to the terms of the Agreement of Indemnity, Defendant Indemnitors, jointly and severally, agreed to indemnify WFIC for counsel fees and expenses incurred in enforcing the terms of the Agreement of Indemnity.

65.     By reason of the foregoing, Defendants Coastal, Richard Silva, Mary Ann Silva, Richard Silva, Jr., and Laura Silva are liable, jointly and severally, to WFIC for all losses, costs, charges for attorneys' fees and expenses that will be sustained or to be incurred by WFIC in connection with this litigation and for such amounts incurred together with interest thereon.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### *(Quia Timet)*

66.     WFIC repeats and realleges each and every allegation set forth in paragraphs "1" through "65" herein as if again set forth at length.

67.     Under the Agreement of Indemnity, the Defendant Indemnitors agreed, jointly and severally, among other things, to deposit collateral with WFIC "immediately upon a demand, a sum of money equal to such reserve and any increase thereof as collateral security to SURETY" to cover the SURETY for any possible liability or loss. *See* **Exhibit A at ¶FOURTH**.

68.     Coastal defaulted by failing to pay its subcontractors on the Riis Landing project.

69.     As a result of Coastal's failure to pay its subcontractors on the Riis Landing project, WFIC has thus far incurred payment bond losses in the amount of $383,109.49 and is currently reviewing additional payment bond claims.

70.     As a result of Coastal's failure to pay its subcontractors on the Riis Landing project, WFIC has also incurred loss adjustment expenses, including attorney fees and expenses in the sum of $6,380.00 through March 31, 2015.

71.     Due to the bond losses and loss adjustment expenses incurred and the pending claims currently being reviewed, WFIC has deemed it necessary to establish an outstanding reserve in the sum of $366,890.51.

72.     WFIC demanded and called upon Coastal and the Defendant Indemnnitors to indemnify WFIC in the amount of $383,109.49 and to deposit collateral in the amount of $366,890.51.

73.     The defendant Indemnitors breached the Agreement of Indemnity by failing to respond to WFIC's demand for indemnification to indemnify WFIC for its losses and have failed to deposit collateral with WFIC for additional potential losses.

74.     Upon information and belief, the Defendant Indemnitors are each in a precarious financial condition.

75.     WFIC is fearful and apprehensive that said Defendant Indemnitors each are, or each may become, financially unable to reimburse WFIC for the amounts WFIC has paid, the additional amounts WFIC may be compelled to pay under the performance and payment bond and the expenses incurred therewith by WFIC, including counsel fees and expenses heretofore incurred in responding to and defending any claim under the bond and in bringing this action.

76.     WFIC is fearful and apprehensive that said Defendant Indemnitors may or have already, jointly or severally, concealed their property and assets or placed same beyond the reach of WFIC, thereby making recovery from any of them difficult if not impossible, and that WFIC will thereby suffer irreparable damage and loss through its inability to recover from the Defendant Indemnitors the amounts WFIC has already paid for payment bond claims, as well as any additional potential payment bond claims WFIC may be compelled to pay under the

aforementioned performance and payment bond, or that WFIC may incur in connection therewith in expenses, fees and costs.

77.     WFIC has no adequate remedy at law and the declaratory and equitable relief sought herein constitutes the only means by which WFIC can secure adequate relief and by which furtherance of justice may be served.

78.     Upon information and belief, unless the relief in the nature herein is requested or its equivalent is granted, the equitable rights of WFIC will be lost and WFIC will suffer irreparable loss and damage.

79.     The deposit of collateral is necessary to secure WFIC against the claims heretofore made, bond losses and loss adjustment expenses incurred by WFIC thus far, as well as additional potential losses pending the full and complete discharge of WFIC's liability under its performance and payment bond and the reimbursement of WFIC for any and all amounts that it may be required to pay under its bond, including reimbursement of  its own attorneys' fees, costs, and expenses; or (b) in the alternative, that the Court order the appointment of a receiver to receive and conserve the property and assets of the Defendant Indemnitors, pending the full exoneration and relief of WFIC from liability under its bond, and reimbursement of WFIC for the amount WFIC may be required to pay thereunder, including its own costs and loss adjustment expenses; or (c) that the Court order the Defendant Indemnitors, jointly and severally exonerate and relieve WFIC, and hold WFIC harmless from all liability, loss, cost, damage, and expenses by such other means and methods as the Court may deem just, reasonable and feasible.

80.     By reason of the foregoing, plaintiff WFIC is entitled to a declaratory judgment and equitable relief of *quia timet* and an order from the Court directing that Defendant Indemnitors deposit with WFIC or the Clerk of this Court for the benefit and protection of WFIC

as Surety an amount to be determined by the Court but not less than $750,000.00, representing the payment bond exposure based on the payment bond losses WFIC has heretofore incurred ($383,109.49) and the posting of an outstanding reserve ($366,890.51) to cover additional potential claims and expenses.

WHEREFORE, Plaintiff Westchester Fire Insurance Company demands judgment for the entry of a money judgment as follows:

1) on the FIRST Cause of Action against Defendant Indemnitors, jointly and severally, to indemnify WFIC in the sum of at least $383,109.49, plus any additional losses for any payment and performance claims and/or losses that WFIC incurs after the date of the complaint for a sum not yet determined,

2) on the SECOND Cause of Action for a declaratory judgment that WFIC is entitled to payment of the balance of the contract funds held by the National Park Service in the sum of $400,000.00,

3) on the THIRD Cause of Action for equitable subrogation for a declaratory judgment that WFIC is entitled to payment of the contract balance held by the National Park Service in the sum of $400,000.00,

4) on the FOURTH Cause of Action against Defendant Indemnitors, jointly and severally to exonerate WFIC as and against any and all claims heretofore made and additional potential claims against WFIC in the sum of at least $750,000.00,

5) on the FIFTH Cause of Action against Defendant Indemnitors, jointly and severally, to indemnify WFIC for an amount not less than $6,380.00 for loss

adjustment expenses, plus such additional amounts incurred by WFIC for a sum not yet determined,

6) on the SIXTH Cause of Action against Defendant Indemnitors, jointly and severally, for such additional amounts as are incurred by WFIC as the matter progresses,

7) on the SEVENTH Cause of Action against Defendant Indemnitors a judgment granting WFIC the equitable relief of *quia timet* and directing the Defendant Indemnitors, jointly and severally, to post and deposit collateral with WFIC or in the alternative with the Court in a sum equal to and sufficient to indemnify WFIC for all its actual and potential losses for claims and expenses sustained and to be incurred  as a result of issuing the Payment Bond for the Riis Landing project, plus all the costs, fees and expenses incurred and to be incurred by WFIC in its retention of attorneys through and to the complete discharge of WFIC's surety bond and the conclusion of this litigation, and

8) all with due and proper interest, together with the costs and disbursements of this action and such other and further relief the Court deems just and proper.

Dated: New York, New York
May 5, 2015

RICHARD B. DEMAS, ESQ.
Gottesman, Wolgel, Flynn,
Weinberg & Lee, P.C.
*Attorneys for Plaintiff*
*Westchester Fire Insurance Company*
11 Hanover Square, 4th Floor
New York, New York 10005
Tel.: (212) 495-0100
E-Mail: rdemas@gottesmanlaw.com



## AGREEMENT OF INDEMNITY

This Agreement of Indemnity ("AGREEMENT"), is made and entered into by the following individuals, partnerships and/or corporations
Coastal Environmental Group, Inc., 320 Carleton Avenue, Suite 600, Central Islip, NY 11722

as PRINCIPAL(s) and

INDEMNITOR(s)

| | Social Security or EIN Number | Mailing Address |
|---|---|---|
| Richard C. Silva | | 41 Fisher Ave., Islip Terrace, NY 11752 |
| Mary Ann Silva | | 41 Fisher Ave., Islip Terrace, NY 11752 |
| Richard C. Silva Jr. | | 5 Roundabout Rd., Smithtown, NY 11787 |
| Laura A. Silva | | 5 Roundabout Rd., Smithtown, NY 11787 |

as INDEMNITOR(s) and Westchester Fire Insurance Company, as SURETY.

### WITNESSETH

WHEREAS, PRINCIPAL(s), in the performance of contracts and the fulfillment of obligations generally, whether solely in its own name or as co-venturer with others, may desire, or be required to give or procure certain BOND(s), and to renew, or continue or substitute the same from time to time with the same or different BOND amounts, and/or conditions or to refrain from canceling said BOND(s);

WHEREAS, at the request of PRINCIPAL(s) and/or INDEMNITOR(s) or both and upon the express understanding that this AGREEMENT should be given, SURETY has executed or caused to be executed, and may from time to time hereafter execute or cause to be executed, said BOND(s) on behalf of the PRINCIPAL(s);

WHEREAS, PRINCIPAL(s) and INDEMNITOR(s) have a substantial, material and beneficial interest in the obtaining, renewing, continuing or substituting of BOND(s); and

WHEREAS, SURETY has relied upon and will continue to rely upon the representations of PRINCIPAL(s) and INDEMNITOR(s) as to their character, identity, control, beneficial and legal ownership, financial condition and existence in procuring or executing BOND(s).

NOW THEREFORE, in consideration of the above stated premises, and of other good and valuable consideration, the receipt of which is hereby acknowledged, PRINCIPAL(s) and INDEMNITOR(s) for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with SURETY, its successors and assigns, as follows:

### DEFINITIONS

**FIRST:** Where they appear in this AGREEMENT and any addenda hereto, the following terms are defined as set forth in this paragraph:

"BOND(s)" means an undertaking or a contract of suretyship, guaranty or indemnity, or an agreement, consent or letter to provide such an undertaking or contract, and the continuation, extension, alteration, renewal or substitution of such an undertaking, contract, agreement, consent or letter, whether with the same or different amounts or conditions, executed or procured by SURETY before or after the date of this AGREEMENT (excluding at the option of SURETY any BOND(s) which are written by SURETY in reliance upon another valid, and enforceable agreement of indemnity in favor of SURETY).

"CONTRACT(s)" means an agreement executed between PRINCIPAL(s) and a third party, together with all associated documents (including, but not limited to, general and special conditions, specifications and drawings) or an undertaking made, obligation or duty assumed, either statutory or otherwise, for which SURETY executes or procures the execution of a BOND(s).

"EVENT OF DEFAULT" means any one or more of the following:

A. Any notice of default by an obligee on any BOND(s) due to abandonment, forfeiture, breach of, or failure, refusal or inability to perform any CONTRACT or obligation contained therein or in the BOND(s) itself, whether actual or alleged;
B. Any failure, delay, refusal or inability of PRINCIPAL(s) to pay claims, bills or other indebtedness incurred in, or in connection with the performance of any CONTRACT;
C. The failure to perform, or comply with the terms, covenants or obligations in this AGREEMENT;
D. The failure to pay or discharge, when due, all indebtedness of PRINCIPAL(s) and/or INDEMNITOR(s) to SURETY;
E. An assignment by PRINCIPAL(s) for the benefit of creditors, or the appointment or an application by PRINCIPAL(s) for the appointment of a receiver or trustee for PRINCIPAL(s) or its property, solvent or not, or if proceedings for the appointment of a receiver or trustee for liquidation, reorganization or arrangement of PRINCIPAL(s) shall be initiated by others;
F. If PRINCIPAL or INDEMNITOR is an individual, the death, disappearance, declaration of incompetence, conviction of a felony, imprisonment, or, if PRINCIPAL(s) and/or INDEMNITOR(s) is not an individual, any change in character, identity, control, arrangement, legal or beneficial ownership or existence of such PRINCIPAL(s) and/or INDEMNITOR(s);
G. Any proceeding or the exercise of any rights by any individual or entity which deprives or impairs the PRINCIPAL's use of its plant, machinery, equipment, plan, drawings, tools, supplies or materials;

H.  In the event that CONTRACT(s), or any portion thereof, relates to the development of real property or construction of improvements upon real property: (i) the failure of PRINCIPAL(s) to pay for labor and materials ordered or used in connection with such development or construction of improvements; (ii) the diversion or non-use by PRINCIPAL(s) of loan funds, equity funds or materials intended by any lender, equity contributor or supplier of such funds or materials to be used and which are needed to perform the CONTRACT(s); or (iii) the voluntary or involuntary cessation or suspension of work required to be performed by PRINCIPAL(s) in connection with the CONTRACT(s);

I.  The failure of PRINCIPAL(s), INDEMNITOR(s) to promptly furnish accurate, complete and current financial statements upon request of SURETY or the furnishing of a financial statement which contains any material misstatement or misrepresentation whether intentional or unintentional;

J.  Any suspension, revocation or other material adverse change in the status of any license of PRINCIPAL(s) with any applicable licensing board or agency that is required to perform the CONTRACT(s) or discharge any obligation under any BOND(s); and

K.  The occurrence of any event other than specified in A. through J. herein which, in the SURETY's sole opinion, may expose SURETY to loss, cost or expense including, but not limited to, a material adverse change in the financial condition of the PRINCIPAL(s) and/or INDEMNITOR(s).

"PRINCIPAL(s)" means any individual or entity for which SURETY executes BOND(s) including any one, combination of, or all of the named individuals, partnerships, or firms or corporation set forth above, any of their present or future subsidiaries, affiliates, whether a corporation, partnership or other entity, their successors in interest, whether acting alone or in joint venture with others not named herein, including any such individual or entity for which SURETY executes BOND(s) or any unrelated individual or entity for which SURETY executes BOND(s) at the request of any INDEMNITOR(s).

"SURETY" means Westchester Fire Insurance Company and its successors, assigns, affiliates, associates and subsidiary companies.

## NOTICE TO SURETY OF ANTICIPATED CHANGE IN NATURE OF PRINCIPAL(s)/INDEMNITOR(s)

SECOND: Written notice must be given by PRINCIPAL(s) and/or INDEMNITOR(s) at the earliest practical time of any anticipated change or negotiations entered into by PRINCIPAL(s) or INDEMNITOR(s) for any anticipated change in the character or identity of PRINCIPAL(s) or INDEMNITOR(s), or of a change of 5% or more in the beneficial or legal ownership of the stock of PRINCIPAL(s) and/or INDEMNITOR(s). Upon receipt of said notice, SURETY shall have the right to examine the books and records and other documents and information pursuant to the Sixteenth paragraph hereof.

## INDEMNITY AND HOLD HARMLESS

THIRD: PRINCIPAL(s) and INDEMNITOR(s) shall exonerate, hold harmless, indemnify and keep indemnified SURETY from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to court costs, counsel fees, costs of investigation, consultant fees, accountant fees, engineer or construction management fees, together with interest thereon at the maximum rate allowed by law, which SURETY may sustain or incur by reason of or in consequence of the:

A.  Execution or procurement of the execution of BOND(s);
B.  Failure by PRINCIPAL(s) or INDEMNITOR(s) to perform or comply with any of the covenants or conditions of this AGREEMENT;
C.  Any Event of Default herein;
D.  Enforcement of any covenant of this AGREEMENT;
E.  Performance of any investigation, attempt or attainment of any release in connection with any BOND(s) or any loss or unpaid premium in connection with any BOND(s);
F.  Prosecution or defense of any action or claim in connection with any BOND(s), whether SURETY, at its own discretion, elects to employ counsel of its own selection or permits or requires PRINCIPAL(s) or INDEMNITOR(s) to make arrangements for SURETY's legal representation; and
G.  Attempt to recover losses or expenses paid or incurred in connection with this AGREEMENT, CONTRACT(s) and/or BOND(s).

Payment shall be made to SURETY by the PRINCIPAL(s) and/or INDEMNITOR(s) as soon as liability exists or is asserted against SURETY, whether or not SURETY shall have made any payment therefore. Such payment shall be equal to whatever amount SURETY, in its judgment, shall deem sufficient to protect it from loss. SURETY shall have the right to use the payment or any part thereof, in payment or settlement of any liability, loss or expense for which PRINCIPAL(s) and/or INDEMNITOR(s) would be obligated to indemnify SURETY under the terms of this AGREEMENT.

In the event of payment by SURETY, SURETY shall be entitled to an accounting with PRINCIPAL(s) or INDEMNITOR(s) for reimbursement for any and all disbursements made by it in good faith in and about the matters contemplated by this AGREEMENT under the belief that it was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. Vouchers or other evidence of any such payments made by SURETY shall be prima facie evidence of the fact and amount of liability to SURETY. PRINCIPAL(s) and INDEMNITOR(s) shall pay to SURETY interest on all disbursements made by SURETY at the maximum rate permitted by law calculated from the date of each disbursement.

## RESERVE DEPOSIT

FOURTH: If for any reason the SURETY shall deem it necessary to establish or to increase a reserve to cover any possible liability or loss for which the PRINCIPAL(s) and INDEMNITOR(s) will be obligated to indemnify SURETY under the terms of this AGREEMENT, PRINCIPAL(s) will deposit with SURETY, immediately upon demand, a sum of money equal to such reserve and any increase thereof as collateral security to SURETY for such liability or loss.

SURETY shall have die right to use such deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which PRINCIPAL(s) and/or INDEMNITOR(s) would be obligated to indemnify SURETY under the terms of this AGREEMENT. SURETY shall have no obligation to invest, or to provide a return on the deposit. PRINCIPAL(s) and INDEMNITOR(s) shall be entitled to the return of any unused portion of the deposit upon termination of the liability of SURETY on the BOND(s) and the performance by PRINCIPAL(s) and INDEMNITOR(s) under the terms of this AGREEMENT.

SURETY's demand shall be sufficient ifsent by REGISTERED or CERTIFIED MAIL to the PRINCIPAL(s) and INDEMNITOR(s) at the addresses stated herein, or at the addresses last known to SURETY, whether or not such demand is actually received.

## ADVANCES

FIFTH: INDEMNITOR(s) hereby authorize and empower SURETY, within SURETY's sole discretion, to guarantee loans, extend SURETY credit, advance, or to lend PRINCIPAL(s) any money, which SURETY may see fit for the purpose of completing CONTRACT(s) or discharging obligations under BOND(s) including such overhead as might be necessary and all such guarantees, credit, advances or loans as well as all costs and expenses incurred by SURETY in relation thereto shall be presumed to be a loss for which PRINCIPAL(s) and INDEMNITOR(s) shall be responsible under this AGREEMENT, notwithstanding that said money or any part thereof should not be used by PRINCIPAL(s).

Contract Indemnity Form (Ed: 05/01/06)

## TRUST FUND

KTH: All payments received for or on account of any CONTRACT(s) shall be held in a trust fund to assure the payment of obligations incurred or to be incurred in the performance of any CONTRACT(s) and for labor, materials, and services furnished in the prosecution of the work under any CONTRACT(s) or any extensions or modifications thereto. All monies due and to become due under any CONTRACT(s) are also trust funds, whether in the possession of PRINCIPAL(s), INDEMNITOR(s) or otherwise. The trust funds shall be for the benefit and payment of all obligations for which SURETY may be liable under any BOND(s). The trust funds shall inure to the benefit of SURETY for any liability or loss it may have or sustain under any BOND(s), and this AGREEMENT and declaration constitute notice of such trust. The trust funds, unless otherwise restricted or regulated by state or local laws, can be commingled with other funds, but the trust fund nature and purpose as stated in this paragraph shall not be modified nor waived by this commingling provision.

## FUNDS CONTROL

SEVENTH: Upon demand by SURETY, PRINCIPAL(s) shall implement the trust or trusts provided for in the SIXTH paragraph of this AGREEMENT by the creation of an account or accounts with a bank or similar depository designated by SURETY, which account or accounts shall be designated as a trust account or accounts for the deposit of such trust funds, and shall deposit therein all monies received for or on account of any CONTRACT(s). Withdrawals from such accounts shall be by check or similar instrument signed by a representative of SURETY. Said trust shall terminate on the payment of all the obligations under the CONTRACT(s) for which the account was created.

## ASSIGNMENT

EIGHTH: With respect to each BOND(s) executed by SURETY, PRINCIPAL(s) (with INDEMNITOR(s) hereby consenting), assigns, transfers and conveys to SURETY but subject to the trust created herein:

A. All monies due or to become due to PRINCIPAL(s) arising out of or in any way related to CONTRACT(s) covered by BOND(s), including but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work, undisbursed loan funds, deposit or reserve accounts, and all collateral pledged by PRINCIPAL(s) and INDEMNITOR(s) to third parties in connection with the CONTRACT(s) or BOND(s);

B. All of the rights of PRINCIPAL(s) in, or arising in any manner out of, all CONTRACT(s) or BOND(s);

C. All of the rights, title and interest of the PRINCIPAL(s) in and to all machinery, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the work under CONTRACT(s) or BOND(s) or elsewhere, including materials purchased for or chargeable to any and all such CONTRACT(s) or BOND(s), which may be in the process of manufacture or construction, in storage elsewhere, or in transportation to any and all of said sites;

D. All of the rights, title and interest of the PRINCIPAL(s) in and to all subcontracts let or to be let in connection with CONTRACT(s) or BOND(s), and in and to all SURETY bonds in favor of PRINCIPAL(s) as oblige relating to such CONTRACT(s) or BOND(s);

E. All of the rights, title and interest of PRINCIPAL(s) in and to any actions, causes of action, claims, demands or proceeds of such actions, causes of action, claims or demands whatsoever which PRINCIPAL(s) may have or acquire against any party in connection with the CONTRACT(s) including but not limited to those against obligees on BOND(s) design professionals, subcontractors, laborers or materialmen or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, inventory or other equipment in connection with or on account of any CONTRACT(s) and against any SURETY or sureties of any oblige, subcontractor, laborer, or materialmen;

F. All monies due or to become due to PRINCIPAL(s) or INDEMNITOR(s) on any policy of insurance relating to any claims or suits arising out of CONTRACT(s) or BOND(s) including, but not limited to, claims or suits under builders risk, fire or employee dishonesty policies, including premium refunds;

G. Any and all rights, title and interest in or use of any patent, copyright or trade secret which is or may be necessary for completion of CONTRACT(s); and

H. The above assignment rights are in addition to and not in substitution of any other rights of SURETY arising by operation of law or otherwise.

The above assignments shall become effective as of the date of this AGREEMENT or the date of the BOND(s) whichever occurs first. SURETY agrees to forbear exercising the rights granted to it under this Eighth paragraph until the occurrence of an EVENT OF DEFAULT. Upon the occurrence of an EVENT OF DEFAULT, PRINCIPAL(s) authorizes and empowers SURETY, or any person or persons designated by SURETY, to execute in the name of PRINCIPAL(s) any instruments deemed necessary or desirable by SURETY to provide absolute title to SURETY of any funds, property and rights as are hereby assigned, transferred or conveyed, and PRINCIPAL(s) hereby authorize SURETY or any person or persons designated by SURETY to take immediate possession of such funds, property and rights, to collect such sums as may be due and to endorse, in the name of the PRINCIPAL(s) and to collect any checks, drafts, warrants and or other instruments made and issued in payment of such sums.

SURETY is authorized to assert and prosecute any right or claim assigned in this AGREEMENT in the name of PRINCIPAL(s) and to compromise and settle such right or claim on such terms as it considers reasonable.

SURETY may sell any property assigned to it pursuant to this AGREEMENT at public or private sale, with or without notice, at any time or place, without incurring liability of any kind to PRINCIPAL(s) or INDEMNITOR(s).

## SETTLEMENTS

NINTH: SURETY shall have the exclusive right in its name or in the name of PRINCIPAL(s) or INDEMNITOR(s) to adjust, settle or compromise any claim, counterclaim, demand, suit or judgment involving any BOND(s) or to take whatever action it may deem necessary, expedient or appropriate. SURETY's determination as to whether any such claim, counterclaim, demand, suit or judgment should be settled shall be binding and conclusive upon PRINCIPAL(s) and INDEMNITOR(s). The vouchers or other evidence of any such payments made by SURETY shall constitute prima facie evidence of the fact and amount of liability of PRINCIPAL(s) and INDEMNITOR(s) to SURETY.

## PERFECTION OF SECURITY INTEREST

TENTH: This AGREEMENT shall constitute a Security Agreement and a Financing Statement for the benefit of SURETY in accordance with the Uniform Commercial Code and any similar statute and may also be used by SURETY without in anyway abrogating, restricting or limiting the rights of SURETY. SURETY may add such schedules to this AGREEMENT describing specific items of collateral covered hereunder as shall be necessary. For the purpose of recording this AGREEMENT, a photocopy of this AGREEMENT acknowledged before a Notary Public as being a true copy hereof shall be regarded as an original.

Contract Indemnity Form (Ed: 05/01/06)

## ATTORNEY-IN-FACT

**TENTH:** PRINCIPAL(s) and INDEMNITOR(s) hereby irrevocably nominate, constitute designate and appoint SURETY or any person or persons designated by SURETY as attorney in fact with the right to exercise all of the rights assigned, transferred and set over to SURETY by this AGREEMENT including but not limited to Financing Statements under the Uniform Commercial Code, disbursement of loan proceeds, endorsement of checks or other instruments payable to PRINCIPAL(s) and/or INDEMNITOR(s) under CONTRACT(s) and to execute and deliver any and all additional instruments or documents deemed necessary or desirable by SURETY:

    A. To vest in SURETY absolute title to any and all monies, property and rights hereby assigned, and
    B. To provide the protection and rights to SURETY contemplated by all of the provisions of this AGREEMENT.

PRINCIPAL(s) and INDEMNITOR(s) hereby ratify and confirm all acts and actions taken and done by SURETY as such Attorney-in-Fact.

## TAKEOVER

**TWELFTH:** Upon occurrence of any EVENT OF DEFAULT, SURETY, at its discretion, shall have the right, but not the obligation conferred upon it by law or by the terms of this AGREEMENT, to take possession of any part or all of the work under CONTRACT(s), at the expense of PRINCIPAL(s) and INDEMNITOR(s), to complete or arrange for completion of the work, and to take such steps which, at its discretion, SURETY may deem advisable or necessary to obtain SURETY's release or to avoid or mitigate loss.

In the event that the CONTRACT(s) and/or BOND(s) relate to the performance of a subdivision agreement between PRINCIPAL(s) and a public entity, and an EVENT OF DEFAULT occurs, SURETY shall have the right, but not the obligation, to revert to acreage the real property which is the subject of the subdivision improvement agreement.

## DECLINATION OF SURETYSHIP

**THIRTEENTH:** SURETY may decline to execute any BOND(s) applied for and the PRINCIPAL(s) and INDEMNITOR(s) shall have no cause of action against SURETY in consequence of its failure to execute any BOND(s). If SURETY executes or provides a bid bond or proposal bond, SURETY retains the right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance bonds) that may be required in connection with any award that may be made under the bid or proposal. Evidence of custom and usage will have no bearing on SURETY's right to decline suretyship under this paragraph.

## NOTICE OF EXECUTION

**FOURTEENTH:** INDEMNITOR(s) hereby waive notice of the execution of any BOND(s) and of the acceptance of this AGREEMENT by SURETY. PRINCIPAL(s) and INDEMNITOR(s) hereby waive all notice of any default, or any other act or acts giving rise to any claim under said BOND(s), as well as notice of any and all liability of SURETY under said BOND(s). PRINCIPAL(s) and INDEMNITOR(s) shall continue to be bound under this AGREEMENT, notwithstanding lack of notice to which they may have been otherwise entitled and notwithstanding any defenses that they would have been entitled to raise.

## RIGHT TO INFORMATION

**FIFTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) will furnish SURETY such information as it may request from time to time concerning the financial condition of PRINCIPAL(s) and INDEMNITOR(s), the status of work under any CONTRACT(s), and/or the payment of obligations in connection therewith.

## BOOKS AND RECORDS

**SIXTEENTH:** At anytime during this AGREEMENT and until such time as the liability of SURETY under all BOND(s) is terminated and SURETY is fully reimbursed all amounts due under this AGREEMENT, SURETY shall have the right of access to the books, records, accounts, documents, computer software, and other computer stored information of PRINCIPAL(s) and INDEMNITOR(s), wherever located, for the purpose of inspection, copying or reproduction. Any financial institution, depository, warehouse, supply house, or other person, firm or corporation, when requested by SURETY, is hereby authorized and required to furnish SURETY any and all information requested including, but not limited to: (i) the status of the work under any CONTRACT(s) being performed by PRINCIPAL(s); (ii) the condition of performance of any CONTRACT(s); (iii) payments or pending payments of accounts including undisbursed loan proceeds; and (iv) full information about all bank accounts and loans and any collateral deposited in connection therewith. Upon SURETY's request, PRINCIPAL(S) and INDEMNITOR(s) shall immediately deliver to SURETY, or its designee, at a time and place and in a manner determined by SURETY, such books, records, accounts, documents, computer software and other computer stored information, and contracts in whatever form, as and when requested by SURETY.

## PREMIUMS

**SEVENTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) shall pay all premiums and charges of SURETY for the BOND(s) and for all policies of insurance whether procured from SURETY or from other insurance companies until PRINCIPAL(s) and INDEMNITOR(s) shall serve evidence satisfactory to SURETY of its discharge or release from all BOND(s) and all liability by reason thereof. The failure of PRINCIPAL(s) or INDEMNITOR(s) to pay premiums shall not constitute a defense to an action under this AGREEMENT.

## DISCHARGE FROM SURETYSHIP

**EIGHTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) will, upon request of SURETY, take action to procure the discharge of SURETY from any BOND(s) and from any liability thereof. SURETY may, at any time take such action as it deems necessary or proper to obtain its release from any and all liability under any BOND(s). Upon discharge or release, SURETY shall return to PRINCIPAL(s) any portion of premium paid which is unearned as a result of such discharge provided that PRINCIPAL(s) is not indebted to SURETY for any other reason.

## SURETYSHIP COVERED

**NINETEENTH:** This AGREEMENT applies to all BOND(s) executed or procured by SURETY for the PRINCIPAL(s) in his own name or as co-venturer with others, whether prior to or subsequent to the execution and delivery of this AGREEMENT and from time to time until this AGREEMENT is terminated in accordance with its terms.

Page 4 of 8

Contract Indemnity Form (Ed: 05/01/06)

## PROTECTION OF OTHER SURETIES

ENTIETH: If SURETY procures the execution of any BOND(s) by other sureties or executes the BOND(s) with co-sureties, or reinsures any portion of said BOND(s) with reinsuring sureties, then all the terms and conditions of this AGREEMENT shall inure to the benefit, as their interests may appear, of such other sureties, co-sureties and reinsurers who shall have the right to maintain an action or actions on this AGREEMENT to enforce their rights hereunder.

## WAIVER OF HOMESTEAD RIGHT

**TWENTY FIRST:** PRINCIPAL(s) and/or INDEMNITOR(s) waive, so far as their respective obligations under this AGREEMENT are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution or sale or other legal process under the laws of any state, territory or possession of the United States.

## NOTICE TO SURETY

TWENTY SECOND: PRINCIPAL(s) and INDEMNITOR(s) shall promptly provide all written notices to SURETY required in this AGREEMENT at 436 Walnut Street, WA(OF, Philadelphia PA 19106, Attention: Surety Department, including but not limited to the following events:

   A. Notice by any obligee on any BOND(s) for PRINCIPAL(s) that PRINCIPAL(s) is in default on any BOND(s) and/or CONTRACT(s) or has failed or refused to perform any CONTRACT(s);
   B. Notice by any obligee on any BOND(s) for PRINCIPAL(s) that PRINCIPAL(s) cure its performance or show cause as to the reason(s) PRINCIPAL(s) should not be terminated or defaulted on any BOND(s) or CONTRACT(s); and
   C. Notice by obligee that there has been a material change in the CONTRACT(s) in connection with the scope of work, the contract amount, the time or method for completion of such CONTRACT(s).

## CONSENT TO CHANGES

**TWENTY THIRD:** SURETY is authorized, without notice to or knowledge of PRINCIPAL(s) or INDEMNITOR(s), to assent to any change whatsoever in any BOND(s) and any CONTRACT(s) including, but not limited to, any change in the time for completion of CONTRACT(s) and for payments or advances thereunder, to assent to or to take any assignment or assignments, to execute or consent to execution of any continuations, extensions, renewals, enlargements, modifications, changes or alterations of any BOND(s) and to execute any substitute or substitutes therefore, with the same or different conditions, provisions and obliges and with the same or larger penalties, and PRINCIPAL(s) and INDEMNITOR(s) shall remain bound under the terms of this AGREEMENT even though any such assent by SURETY does or may substantially increase the liability of PRINCIPAL(s) and INDEMNITOR(s).

## SUBORDINATION OF INDEMNITORS

**TWENTY FOURTH:** PRINCIPAL(s) and INDEMNITOR(s) waive and subordinate all rights of indemnity, subrogation and contribution of each against the other until all obligations to SURETY under this AGREEMENT, at law or in equity, have been fully satisfied.

## ELECTION OF REMEDIES

**TWENTY FIFTH:** All rights and remedies of SURETY under this AGREEMENT shall be cumulative, and the exercise of or failure to exercise, any right or remedy at anytime shall not bean election of remedy or a waiver of any other right or remedy. Failure of SURETY to pursue any remedy against anyone or more of PRINCIPAL(s) and INDEMNITOR(s) shall not release or waive any right against any other of the PRINCIPAL(s) and/or INDEMNITOR(s).

## OTHER INDEMNITY

**TWENTY SIXTH:** The rights, powers and remedies given to SURETY by this AGREEMENT shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which SURETY may have or acquire against PRINCIPAL(s) and INDEMNITOR(s) or others whether by the terms of any other agreement, by operation of law or otherwise.

PRINCIPAL(s) and INDEMNITOR(s) shall continue to remain bound under this AGREEMENT even though SURETY may have, at any time either prior to or after the execution of this AGREEMENT, with or without knowledge of PRINCIPAL(s) and INDEMNITOR(s), accepted or released other agreements of indemnity from PRINCIPAL(s), INDEMNITOR(s) or others or released collateral held in connection with the execution of BOND(s) or other policies of insurance.

## PARTIAL INVALIDITY OR EXECUTION

**TWENTY SEVENTH:** If any of the persons named herein as PRINCIPAL(s) and INDEMNITOR(s) fails to execute this AGREEMENT or if the execution hereof by any of the PRINCIPAL(s) and INDEMNITOR(s) shall be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner diminish or otherwise affect the obligation or liability hereunder of any other PRINCIPAL(s) and INDEMNITOR(s).

Failure of the PRINCIPAL(s) to sign any BOND(s) shall not relieve the PRINCIPAL(s) and INDEMNITOR(s) of liability under this AGREEMENT.

If any provision or provisions of this AGREEMENT are held to be void or unenforceable under the laws of the place governing its construction or enforcement, this AGREEMENT shall not be void or unenforceable thereby but shall continue in effect and be enforceable as though such provision or provisions were omitted.

## SEPARATE ACTION SETTLEMENT

**TWENTY EIGHTH:** Separate suits maybe brought on this AGREEMENT against any and all of the PRINCIPAL(s) and INDEMNITOR(s) and the bringing of the suit or the recovery of a judgment upon any cause of action shall not prejudice or bar the bringing of another suit or suits at anytime.

SURETY is hereby expressly authorized to settle any claim based upon this AGREEMENT with anyone or more of PRINCIPAL(s) and/or INDEMNITOR(s) individually, and such settlement or compromise shall not affect the liability of any of the rest of the PRINCIPAL(s) and INDEMNITOR(s).

Contract Indemnity Form (Ed: 05/01/06)

## SET OFF

**TWENTY NINTH:** SURETY may reduce the amount of PRINCIPAL's and INDEMNITOR's liability to SURETY hereunder by applying to such liability any money payable to PRINCIPAL(s) and/or INDEMNITOR(s) by SURETY. The money payable to PRINCIPAL(s) or INDEMNITOR(s) may be, but is not limited to, any money payable by SURETY as an insurer of PRINCIPAL(s) or INDEMNITOR(s) or as an insurer of any other individual or legal entity, or any money payable to PRINCIPAL(s) or INDEMNITOR(s) as a return of unearned or other premium, or money payable to settle a claim of PRINCIPAL(s) or INDEMNITOR(s) against SURETY or any individual or legal entity insured or bonded by SURETY.

## WAIVER AND MODIFICATION

**THIRTIETH:** The rights and remedies afforded to SURETY by the terms of this AGREEMENT may not be waived or modified orally and no written change or modification shall be effective until signed by an officer of SURETY.

## TERMINATION

**THIRTY FIRST:** This is a continuing AGREEMENT which remains in full force and effect until terminated. If PRINCIPAL(s) or INDEMNITOR(s) previously executed a similar agreement of indemnity in favor of SURETY, SURETY's accepting this AGREEMENT neither terminates nor relieves PRINCIPAL(s) or INDEMNITOR(s) from such similar agreements unless terminated in accordance with the terms and conditions of such similar agreements.

This AGREEMENT may be terminated as to PRINCIPAL(s) or any INDEMNITOR(s) upon written notice sent by registered or certified mail to SURETY at its offices at 436 Walnut Street, WA1OF, Philadelphia, PA 19106.

Termination of this AGREEMENT shall not be effective until thirty (30) days after receipt of said written notice by SURETY.

Termination of this AGREEMENT shall not relieve PRINCIPAL(s) or INDEMNITOR(s) from liability to SURETY arising out of BOND(s) executed, provided or procured by SURETY on behalf of PRINCIPAL(s) prior to the effective date of such termination.

IN WITNESS WHEREOF, THE UNDERSIGNED has/have executed this AGREEMENT this 7 day of January, 2010.

**PRINCIPAL(s):** Coastal Environmental Group, Inc.

By _____ Name and Title Richard C. Silva — President — CEO  Address 320 Carleton Avenue, Suite 600, Central Islip, NY 11722

By _____ Name and Title  Address _____

By _____ Name and Title  Address _____

By _____ Name and Title  Address _____

**INDEMNITOR(s):**

By _____ Richard C. Silva  Address 41 Fisher Ave., Islip Terrace, NY 11752

By _____ Mary Ann Silva  Address 41 Fisher Ave., Islip Terrace, NY 11752

By _____ Richard C. Silva Jr.  Address 5 Roundabout Rd., Smithtown, NY 11787

By _____ Laura A. Silva  Address 5 Roundabout Rd., Smithtown, NY 11787

By _____  Address _____

By _____  Address _____

By _____  Address _____

By _____  Address _____

Page 6 of 8

Contract Indemnity Form (Ed: 05/01/06)

**FOR NOTARIAL ACKNOWLEDGMENT OF PRINCIPAL(s)/INDEMNITOR(s)**

### CORPORATE/LLC ACKNOWLEDGMENT

State of _Florida_
County of _Palm Beach_ ) ss:
On this _7th_ day of _January_, 20 _10_, before me personally came  Richard C. Silva _____ to me known, who
being by me duly sworn, deposed and says that (he)(she) is the ~~President~~ _CEO_ of Coastal Environmental Group, Inc. _____, the
corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such
corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

KIMBERLY L ROMANELLI # 141 687 694
Commission # DD498626
My Commission Expires 02-19-2010
Bonded Through Notary
Public Underwriters

(Signature of Notary Public)
My commission expires _02/19/2010_

### CORPORATE/LLC ACKNOWLEDGMENT

State of _Florida_
County of _FL_ ) ss:
On this _____ day of _____, 20____, before me personally came _____ to me known, who
being by me duly sworn, deposed and says that (he)(she) is the _____ of _____, the
corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such
corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

(Signature of Notary Public)
My commission expires _____

### CORPORATE/LLC ACKNOWLEDGMENT

State of _____
County of _____ ) ss:
On this _____ day of _____, 20____, before me personally came _____ to me known, who
being by me duly sworn, deposed and says that (he)(she) is the _____ of _____, the
corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such
corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

(Signature of Notary Public)
My commission expires _____

### CORPORATE/LLC ACKNOWLEDGMENT

State of _____
County of _____ ) ss:
On this _____ day of _____, 20____, before me personally came _____ to me known, who
being by me duly sworn, deposed and says that (he)(she) is the _____ of _____, the
corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such
corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

(Signature of Notary Public)
My commission expires _____

### PARTNERSHIP ACKNOWLEDGMENT

State of _____
County of _____ ) ss:
On this _____ day of _____, 20____, before me personally comes _____ a
member of the co-partnership of _____ to me known and known to me to be the person(s)
who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he)(she) executed the same as and for the act and deed of the said co-
partnership.

(Signature of Notary Public)
My commission expires _____

### PARTNERSHIP ACKNOWLEDGMENT

State of _____
County of _____ ) ss:
On this _____ day of _____, 20____, before me personally comes _____ a
member of the co-partnership of _____ to me known and known to me to be the person(s)
who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same as and for the act and deed of the said co-
partnership.

(Signature of Notary Public)
My commission expires _____

Contract Indemnity Form (Ed: 05/01/06)

**INDIVIDUAL ACKNOWLEDGMENT**

State of _Florida_
County of _Palm Beach_ ) ss:
On this _7th_ day of _January_, 20_10_ before me personally came Richard C. Silva
known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.                                                                 to me

NY Lic # 141 687698

KIMBERLY L ROMANELLI
Commission # DD498620
My Commission Expires 02-19-2010
Bonded Through Notary
Public Underwriters

_(Signature of Notary Public)_
My commission expires _2/19/2010_

**INDIVIDUAL ACKNOWLEDGMENT**

State of _Florida_
County of _Palm Beach_ ) ss:
On this _7th_ day of _January_, 20_10_ before me personally came Mary Ann Silva
known and known to me to be the person who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.                                                                 to me

NY Lic # 431805237

KIMBERLY L ROMANELLI
Commission # DD498620
My Commission Expires 02-19-2010
Bonded Through Notary
Public Underwriters

_(Signature of Notary Public)_
My commission expires _2/19/2010_

**INDIVIDUAL ACKNOWLEDGMENT**

State of _New York_
County of _Suffolk_ ) ss:
On the _7th_ day of _January_, 20_10_ before me personally came Richard C. Silva Jr.
known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.                                                                 to me

PAULA SCHLICHT
Notary Public, State of New York
No. 4823250
Qualified in Suffolk County
Commission Expires NOV 30, 2010

_(Signature of Notary Public)_
My commission expires _November 30, 2010_

**INDIVIDUAL ACKNOWLEDGMENT**

State of _New York_
County of _Suffolk_ ) ss:
On this _7_ day of _January_, 20_10_ before me personally came Laura A. Silva
known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.                                                                 to me

PAULA SCHLICHT
Notary Public, State of New York
No. 4823250
Qualified in Suffolk County
Commission Expires NOV 30, 2010

_(Signature of Notary Public)_
My commission expires _November 30, 2010_

**INDIVIDUAL ACKNOWLEDGMENT**

State of _____
County of _____ ) ss:
On this_____ day of_____, 20--, before me personally came _____
known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.                                                                 to me

_(Signature of Notary Public)_
My commission expires _____

**INDIVIDUAL ACKNOWLEDGMENT**

State of _____
County of _____ ) ss:
On this_____ day of_____, 20, before me personally came _____
known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.                                                                 to me

_(Signature of Notary Public)_
My commission expires _____

Contract Indemnity Form (Ed: 05/01/06)                    Page 8 of 8

ALL-STATE LEGAL®
07181-BF • 07182-BL • 07183-GY • 07184-WH
www.aslegal.com

*Index No.* ............................... *Year 20*............

Civil Case No. ...............................

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WESTCHESTER FIRE INSURANCE COMPANY,

Plaintiff,

-against-

COASTAL ENVIRONMENTAL GROUP INC., RICHARD C. SILVA,
MARY ANN SILVA, RICHARD C. SILVA, JR. and LAURA A. SILVA

Defendants.

COPY

# COMPLAINT

GOTTESMAN, WOLGEL, FLYNN, WEINBERG & LEE, P.C.
A Professional Corporation Incorporated in the State of New York

*Attorneys for*

*Plaintiff Westchester Fire Insurance Company*

11 HANOVER SQUARE
NEW YORK, N.Y. 10005
TEL. NO. (212) 495-0100
FAX NO. (212) 480-9797

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State,
certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed
document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not
obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are
not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential
claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

*Dated:* .............................................   Signature ...............................................................................................................

Print Signer's Name...............................................................................................

*Service of a copy of the within*                                                  *is hereby admitted.*

*Dated:*

*Attorney(s) for*

*PLEASE TAKE NOTICE*

☐ *that the within is a (certified) true copy of a*
NOTICE OF  *entered in the office of the clerk of the within-named Court on*                         *20*
ENTRY

☐ *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF  *Hon.* ........................................, *one of the judges of the within-named Court,*
SETTLEMENT  *at* ........................................
*on* ........................................ *20*......, *at* ........................ *M.*

*Dated:*

GOTTESMAN, WOLGEL, FLYNN, WEINBERG & LEE, P.C.
A Professional Corporation Incorporated in the State of New York

*Attorneys for*

To:

11 HANOVER SQUARE
NEW YORK, N.Y. 10005